UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

UNITED STATES OF AMERICA

        -against-                  17 Cr. 547-002 (RWS)

                                         SENTENCING
NELSON KELLY,                        OPINION

                     Defendant.

------------------------------------------X

**Sweet, D.J.**

On December 6, 2017, James R. Christ ("Defendant" or "Christ") allocuted to conspiracy to commit honest services and mail fraud, and to committing honest services and mail fraud. Based on the conclusions set forth below, Christ will be sentenced to 24 months' imprisonment, followed by three (3) years' supervised release, subject to the scheduled sentencing hearing on June 1, 2018.

**Prior Proceedings**

Christ is named in a superseding felony information filed in the Southern District of New York on September 13, 2017. Count One charges that from January 2008 to September 2016, in

1

the Southern District of New York and elsewhere, Christ and others known and unknown, conspired to commit honest services and mail fraud in violation of 18 U.S.C. §§ 1341 and 1346.

Count Two charges that from January 2008 to September 2016, in the Southern District of New York and elsewhere, Christ and others known and unknown, committed honest services and mail fraud in that co-defendant Nelson Kelly ("co-defendant" or "Kelly") caused Allied Aviation ("Allied" or the "Victim Company") at which he worked as a senior executive to pay a purported engineering company that Christ owned and operated more than $4 million for services that Christ's company never provided to the Victim Company. In the course of executing such scheme, Christ and Kelly caused checks in payment of Christ's fraudulent invoices to be delivered by the United States Postal Service from the Victim Company's office in Manhattan to Christ, in Georgia.

On December 6, 2017, Christ appeared before the Honorable James L. Cott and allocuted to the conduct as charged in Counts One and Two without the benefit of a plea agreement. Kelly and Christ are sentenced to be scheduled on June 1, 2018.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

 (B) to afford adequate deterrence to criminal conduct;

 (C) to protect the public from further crimes of the defendant; and

 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

 (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

3

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

**The Offense Conduct**

The Court adopts the facts set forth in the PSR with respect to the offense conduct. These facts are summarized, in brief form, below.

4

The investigation in this case was conducted by the United States Postal Inspection Service ("USPIS").

Kelly was employed by an aviation services company, the Victim Company, that provided commercial airplane fueling services at over twenty-five major airports in the United States and Canada, including a certain international airport in California (the "California Airport"). The Victim Company maintained a "Policy of Business Conduct" handbook (the "Handbook"), which required every employee to avoid conflicts of interest and to report potential conflicts of interest to the Victim Company. The Handbook also obligated employees to maintain books and records that "accurately" and "fairly" reflect all transactions and expressly prohibited "false, artificial or misleading entries." Moreover, the Handbook warned that acceptance of "gifts, kickbacks, or bribes" may be a violation of federal wire and mail fraud laws. Kelly received a copy of the Handbook in February 2006.

From May 2013 to June 2016, Kelly also served as the Victim Company's Regional Assistant Vice President and General Manager. In this capacity, Kelly prepared the annual budgets for the Victim Company's operations at the California Airport and supervised those operations, including hiring vendors.

Christ was a resident of Georgia and the president and chief executive officer of Christ Marketing, Inc., d/b/a Christ Engineering ("Christ Marketing"), which was registered in California in July 2006. Christ Marketing's registered addresses were Christ's home address in Grayson, Georgia, and Kelly's home address in Spring Valley, California. Christ Marketing purported to be a general engineering contractor.

The Victim Company manages and operates clusters of jet fuel tanks, known as fuel tank farms, and pumping stations, known as loading racks, at numerous airports. As the name implies, jet fuel is initially stored in the fuel tanks and later piped to pumping stations, where fuel trucks go to load up with fuel for delivery to awaiting aircraft. Since at least 2007, the Victim Company has been responsible for maintaining the fuel tank farm and pumping station at the California Airport and ensuring that the fuel complied with regulatory standards.

The Victim Company tested all batches or truckloads of jet fuel delivered to its fuel tank farm and removed water from the fuel. That removed water was stored in a containment tank along with precipitation that fell within the containment areas surrounding the fuel tank farm. Most of the captured water was

allowed to evaporate from the containment areas, provided that the water level remained below certain levels.

Before October 2013, water that exceeded acceptable levels was transported offsite by truck for safe disposal. In October 2013, the Victim Company installed water separators at both the fuel tank farm and the pumping station to clean the water in the containment areas. Thereafter, the bulk of the water was discharged directly into the sewer system, leaving only a small amount, if any, which needed to be transported by truck for disposal.

The Victim Company hired Christ Marketing to provide Water Disposal Services for its facilities at the California Airport beginning in 2007. From January 2008 through June 2016, Christ Marketing submitted to the Victim Company approximately 457 invoices, totaling over $5.1 million, the bulk of which was for water disposal services.

Based on a review of the Victim Company's ledgers, the records from the National Oceanic and Atmosphere Administration, and the cost per gallon of water disposal charged by Christ Marketing, the Victim Company's total cost for Water Disposal Services from 2008 to 2013 should have been approximately

7

$300,000. During that time period, Christ Marketing charged $2.9 million.

After the water separators were installed in October 2013, the cost of water disposal for the Victim Company should have been significantly reduced. Instead, in 2013 Christ and Kelly caused the Victim Company to pay over $719,340 for Water Disposal Services. This amount was $300,000 higher than the already inflated sum billed in 2012, even though the installation of the water separators in 2013 and lower rainfall in 2013 as compared to 2012 should have resulted in substantially lower expenses.

In 2014, 2015 and 2016, Christ continued to bill the Victim Company hundreds of thousands of dollars each year for Water Disposal Services that were not actually provided and were unnecessary. Kelly prolonged the fraudulent scheme by directing that the invoices for Water Disposal Services be concealed in the Victim Company's general ledger under different line items, such as "Inspection Services," "Special Project Expense," and "EPA Services." From 2014 to 2016, the total amount booked to those line items, plus the sum booked to "water treatment expense" was nearly $2 million.

Christ emailed invoices from his home in Georgia to Kelly in California. Kelly forwarded the invoices to the Victim Company's headquarters located in New York, New York, who in turn sent checks by U.S. Mail to Christ in Georgia.

On May 16, 2016, the treasurer of the Victim Company sent Kelly an email requesting backup documentation for an invoice in the amount of $64,063.81 from Christ Marketing. In response, Kelly claimed that Christ Marketing at that time was "working on our asphalt repairs," "oil water separator cleaning, waste water collection, spent filter collections and barrel collections [. . .] and [] underground tank testing and cleaning." One month later, Kelly resigned from the Victim Company.

On November 28, 2016, as part of the Victim Company's effort to audit Christ Marketing's invoices and payments, the Victim Company's controller called Christ to request documentation to support the total of approximately $5.2 million that Christ Marketing had billed the Victim Company from 2007 to 2016. In response, Christ left a voicemail message in which he claimed that Christ Marketing ceased operations in about June 2016 and was no longer in business. Furthermore, Christ claimed that he was unable to provide any supporting documentation for his invoices to the Victim Company because he had discarded all

Christ Marketing business records relating to the work performed for the Victim Company.

Based upon bank records, Kelly received at least 90 checks totaling at least $372,600 drawn on accounts held in the name of "Christ Marketing."

In a mortgage application submitted to CitiMortgage in June 2007, Kelly claimed to have two sources of income: the Victim Company and "Christ Engineering" (i.e., Christ Marketing's "doing business as" name). With respect to the latter, Kelly claimed he was self-employed at "Christ Engineering" from "1/1/06-present," with a monthly income of "$1,500." In support of his mortgage application, Kelly also submitted a letter signed by Christ stating that Kelly was employed by Christ Engineering and "earned a minimum of $1,500 per month." There is no record of Kelly receiving a salary from Christ.

Kelly was arrested in the Northern District of Georgia on May 8, 2017. According to the Government, Kelly is responsible for at least $3,999,618 in loss.

Christ was arrested in the Northern District of Georgia on May 9, 2017. According to the Government, Christ is responsible for at least $3,999,618 in loss.

**The Relevant Statutory Provisions**

For Counts One and Two of the information, to which Christ pleaded guilty, the maximum term of imprisonment is twenty (20) years on each Count. See 18 U.S.C. §§ 1341, 1349. The Court may impose a term of supervised release of not more than three (3) years as to Counts One and Two. Id. § 3583(b)(2). Multiple terms of supervised release shall run concurrently. Id. § 3624(e).

The Defendant is eligible for not less than one nor more than five years' probation because the offense is a Class C felony. Id. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. Multiple terms of probation shall run concurrently. Id. § 3564(b).

The maximum fine is twice the gross gain or less, namely $7,999,236 on each Count. Id. § 3571(b). A special assessment of $100 on each Count is mandatory. Id. § 3013.

11

Pursuant to 18 U.S.C. § 3663A, restitution shall be ordered in this case. Specific restitution information is awaited from the Government and the victim.

**The Guidelines**

The 2016 edition of the United States Sentencing Commission Guidelines Manual, incorporating all Guideline amendments, was used to determine the defendant's offense level. U.S.S.G. § 1B1.11. Pursuant to U.S.S.G § 3D1.2(b), Counts One and Two are grouped together into a single Group. Guideline § 2B4.1 applies to the Group.

The base offense level is 8. U.S.S.G. § 2B4.1(a). An 18-level enhancement applies because the loss exceeded $3.5 million, but was less than $9.5 million. Id. §§ 2B4.1(b)(1)(B), 2B1.1(b)(1)(J). The Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two (2) levels. Id. § 3E1.1(a). The Defendant has also assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one (1) additional level. Id. Searches of all relevant databases reveal

that the Defendant has no prior criminal convictions or arrests. Defendant's total criminal history score is zero (0). Accordingly, the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history of zero establishes a criminal history category of I. In accordance with the above, the applicable Guidelines offense level is 23.

Based upon a total offense level of 23 and a criminal history category of I, the Guideline imprisonment range is 46 to 57 months. Since the offense is a Class C felony, the Guidelines range for a term of supervised release is 1 to 3 years. Id. § 5D1.2(a)(2). Since the applicable Guideline range is in Zone D of the Sentencing Table, the Defendant is ineligible for probation. Id. § 5B1.1, comment n 2.

The fine range for this offense is from is $20,000 to $15,998,472. Restitution shall be ordered. Id. § 5E1.1. Costs of prosecution shall be imposed on the Defendant as required by statute. Id. § 5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. Id. § 5E1.2(d)(7), 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic

13

monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated July 13, 2017, provides a daily cost of $95, a monthly cost of $2,898, and an annual cost of $34,770 for imprisonment.

Restitution shall be ordered. U.S.S.G. § 5E1.1.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), having considered the Guidelines and all of the factors set forth in § 3553(a), and having reviewed the Presentence Investigation Report, the Court will impose a sentence within the Guidelines range.

14

**The Sentence**

For the instant offense, James R. Christ shall be sentenced to 24 months' imprisonment on Counts One and Two. The term of imprisonment shall be followed by a term of three (3) years of supervised release on each Count with the terms to run concurrently.

As mandatory conditions of his supervised release, the Defendant shall:

(1) Not commit another federal, state, or local crime.

(2) Not unlawfully possess a controlled substance.

(3) Refrain from any unlawful use of a controlled substance.

(4) Cooperate in the collection of DNA, as directed by the probation officer.

(5) Make restitution in accordance with 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663, 3663A, and 3664.

(6) Comply with the standard conditions that have been adopted by this Court as well as with any other conditions on the attached page.

The standard conditions of supervision (1-13) apply with the following special conditions:

(1) The Defendant must submit his person, residence, place of business, vehicle, and any property or electronic devices under his control to a search on the basis that the probation officer has reasonable suspicion that contraband or evidence of a violation of the

15

conditions of his probation/supervised release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant must inform any other residents that the premises may be subject to search pursuant to this condition.

(2) The Defendant must not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the Defendant is in compliance with the installment payment schedule.

(3) The Defendant must provide the probation officer with access to any requested financial information.

(4) The Defendant shall be supervised by the district of residence.

It is further ordered that the Defendant shall pay to the United States a special assessment of $200, which shall be due immediately.

As Allied Aviation Service has suffered injury compensable under the Victim and Witness Protection Act, the Defendant must make restitution except that no further payment shall be required after the sum of the amounts actually paid by all defendants has fully covered the compensable injury.

Specific restitution information is awaited from the Government and the victim. If necessary, the determination of restitution may be deferred for a maximum of 90 days after sentencing, in accordance with 18 U.S.C. § 3664(d)(5) and (e).

If the Defendant is engaged in a BOP non-UNICOR work program, the Defendant must pay $25 per quarter toward the criminal financial penalties. However, if the Defendant participates in the BOP's UNICOR program as a grade 1 through 4, the Defendant must pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. § 545.11.

The remaining restitution must be paid in monthly instalments of 10% of gross monthly income over a period of supervision to commence 30 days after the date of the judgment or the release from custody if imprisonment is imposed.

The Defendant must notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

Because the Defendant does not have the ability to pay a fine, the fine in this case has been waived.

As a result of committing the offense as cited in Counts One and Two of the Information, the Defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses.

Pursuant to Rule 32.3, "[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at the sentencing. The Court must also include the forfeiture order, directly or by reference, in the judgment."

The Defendant is viewed as a good candidate for voluntary surrender. He has kept all court appearances and has been in compliance with all terms and conditions of his pretrial release. He is not viewed as a flight risk or a danger to the community.

It is so ordered.

**New York, NY**
**May 29, 2018**

_____
ROBERT W. SWEET
U.S.D.J.